UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MONICA J. WARD,

    Plaintiff,

vs.                              Case No. 3:06-cv-753-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

    Defendant.

_____

### OPINION AND ORDER[2]

### I. Status

Monica J. Ward is appealing the Social Security Administration's denial of her claim for Disability Insurance Benefits. Her alleged inability to work is based on "abdominal pain, vomit[]ing, nausea, chronic fatigue, dizziness, malnourish[ment], ulcers, [and inability] to eat solids." Transcript of Administrative Proceedings (Tr.) at 155

---

    [1] Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue, Commissioner of Social Security, is substituted as Defendant herein.

    [2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

(capitalization omitted).  Plaintiff was found not disabled by Administrative Law Judge (ALJ) James R. Russell in a Decision entered on March 27, 2006.  *Id.* at 16, 22-23.  Ms. Ward has exhausted the available administrative remedies and the case is properly before the Court.

Plaintiff challenges the Decision on multiple grounds.  Her arguments include attacks targeting the ALJ's residual functional capacity (RFC) analysis, rejection of medical opinion, election not to further develop the record, alleged failure to consider all impairments in combination, and discussion of her pain complaints. *See* Plaintiff's Brief (Doc. #13; Memorandum).

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if . . . supported by 'substantial evidence[.]'"  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th

---

[3]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy.  *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). Despite the existence of support in the record, the ALJ's determination may not be insulated from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

#### A.  RFC

Claimant challenges the ALJ's RFC analysis in various ways. For clarity, her contentions will be addressed under separate subheadings.

##### 1.  Symptoms Ordinarily Associated with a Diagnosis

Observing "the ALJ admitted that [she] suffered from fibromyalgia," Ms. Ward charges the judge "failed to credit the symptoms . . . naturally flowing from the condition." Memorandum at 7.

Indeed, the ALJ did acknowledge fibromyalgia as a severe impairment, Tr. at 20, but he rejected the extent of functional limitations alleged. The suggestion that certain limitations "naturally flow[] from" the diagnosis of fibromyalgia, Memorandum

at 7, and so must be credited, is not persuasive. *See, e.g., Reeves v. Astrue*, No. 06-16598, 2007 WL 1841166, at *7 (11th Cir. June 28, 2007) (per curiam) (although record established fibromyalgia, entire pain standard still needed to be met); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam) (credibility as to fibromyalgia symptoms can be discounted where determination does "not turn on the lack of objective evidence documenting fibromyalgia"); *Leger v. Barnhart*, No. 05-3741, 2006 WL 3308215, at *3 (E.D. Penn. Nov. 14, 2006) (diagnosis of fibromyalgia insufficient; claimant must show functional limitations preclude work).

   2.   **The Subjectivity of Fibromyalgia**

Plaintiff claims the ALJ committed error by failing "to recognize that fibromyalgia is characterized by subjective symptoms and that there is no objective test that can be performed to confirm the existence of or the severity of fibromyalgia." Memorandum at 7-8.

That the judge accepted Plaintiff's fibromyalgia as a severe impairment moots the argument he failed to acknowledge no objective test can confirm its presence. Concerning the severity of the condition as evidenced by the Fibromyalgia Residual Functional Capacity Questionnaire (FRFCQ) from Dr. Myriam C. Perez, *see* Tr. at 529-32, the ALJ reasoned that "[t]he lack of significant objective

findings in the other evaluations and the diagnostic test findings of record" justified according little weight to the FRFCQ. *Id.* at 21. This was not the sole basis given for discounting Dr. Perez's opinions, and standing alone a reference to the absence of objective findings does not establish error. *Cf., e.g., Reeves*, 2007 WL 1841166, at *7 (deciding the record did "not support a finding that there was objective medical evidence that confirmed the severity of . . . pain or fatigue" associated with fibromyalgia).

**3. Reviewing Opinion Tendered Prior to Diagnosis**

Claimant asserts "the ALJ improperly heavily relied upon the opinion of a single nonexamining state agency physician . . . that was rendered prior to [her] being diagnosed with fibromyalgia." Memorandum at 8.

At the outset, it is noted the judge did not purport to give the consultants' opinions controlling weight. Rather, he contended these opinions simply gave "further support[]" to "[t]he conclusion that the claimant is not disabled[.]" Tr. at 21. In any event, the Court has already rejected Plaintiff's suggestion that a certain level of functional limitations must automatically be accepted along with a diagnosis. Similarly, that an opinion as to limitations is rendered before a particular diagnosis is made does not necessarily establish the opinion's invalidity.

- 5 -

**4. Reviewing Opinion Offered by Pediatrician**

"[T]he state agency nonexamining physician[,]" Ms. Ward observes, "is not even a specialist in the field. Rather, he is a pediatrician whose specialty is caring for children[.]" Memorandum at 11.

An ALJ is required to consider every medical opinion that is in evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Unless a treating source is given controlling weight, an opinion should be evaluated by examining such factors as: (1) length and frequency of treatment (if any), (2) nature and extent of the relationship, (3) supportability, (4) consistency, and (5) specialization. *See id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The Commissioner acknowledges "the opinion of a non-examining physician" cannot by itself "constitute substantial evidence[.]" Amended Memorandum in Support of the Commissioner's Decision (Doc. #18; Opposition) at 11. Certainly the opinion at issue was of limited value due to the doctor not having examined or treated Claimant, and the physician's specialty did not particularly enhance its worth.

**5. Reviewing Opinion Preceded MRI**

Plaintiff also draws attention to the fact "the pediatrician was unaware that [her] MRI results in 2005 would reveal

spondylolisthesis in the lumber spine area and disc protrusions at the cervical spine area." Memorandum at 14.

While new diagnoses and even additional evidence of anatomical abnormalities do not render meaningless previous evaluations of functional ability, they do perhaps augment the list of reasons the ALJ would not have been justified in affording great weight to the reviewing physician's opinion.

**6.   Analysis of Condition Subsequent to March 2005**

According to Claimant, her "cervical and lumbar spine conditions clearly worsened in March 2005 which led to a flurry of treatment and the MRI scans[.]" *Id.* at 16. Yet, the ALJ "did not engage in an analysis of her functioning after the worsening of the spinal conditions." *Id.* In a related vein, Plaintiff asserts there is no evidence subsequent to the MRIs proving she "has the functional capacity to perform the full range of light work, without any limitations." *Id.* at 14; *see also id.* at 17-18.

Claimant does not explain precisely what additional limitations resulted from the alleged worsening. Nevertheless, to the extent the records may suggest decline, the potential need for further evidence (such as a consultative evaluation), *see* duty to develop discussion *infra*, is highlighted.

**7. Nonexertional Limitations**

Ms. Ward complains "[t]he Commissioner failed to consider meaningfully the effect of [her] nonexertional limitations of pain, nausea, and vomiting on her ability to perform any work on a sustained basis since September 2002." Memorandum at 18 (emphasis omitted).

The ALJ's pain analysis will be discussed separately. As for nausea/vomiting, the judge deemed the assertion of severe and frequent nausea significant enough to address. However, he dismissed the alleged condition on a single ground, by stating Claimant "testified that she weighs 227 pounds." Tr. at 21. In that the judge was unwilling to consider nausea due to Plaintiff's weight, a glance at Ms. Ward's journal (which contains numerous contemporaneous reports of nausea and vomiting) may be worthwhile. For instance, in the entry dated February 18, 2003, weight was reported to be 215 pounds, and Plaintiff was able to "eat anything[.]" *Id.* at 141. A few weeks later, on March 11, 2003, weight was down to 204, and she indicated she couldn't "keep down any solids again[.]" *Id.*

Thus, there appears to be at least a potential explanation for intermittent weight gain despite frequent nausea--overeating during periods of symptom relief. The single reason presented by the judge is insufficient. On remand, the ALJ must reconsider the

matter, although the Court does not intend to suggest he must fully credit the testimony.

**B.  Treating Physician**

Plaintiff objects to the judge's rejection of Dr. Perez's opinion. She notes the doctor "was not a one-time consultative physician but treated [her] with medications. Even if Dr. Perez was not a treating physician, the ALJ still was required to offer a cogent specific explanation for rejecting Dr. Perez's opinion. The ALJ failed to do so." Memorandum at 11.

The ALJ did not specify whether he considered Dr. Perez to be a treating physician. Since according treating physician status may have been appropriate, *see Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (per curiam), and there is no indication the judge refused to do so, the Court will assume the standard applicable to the analysis of opinions from such doctors should be used.

"[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also*

*Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see Phillips*, 357 F.3d at 1240-41. However, the ALJ may not simply substitute his judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

The ALJ rejected Dr. Perez's opinions due to "[t]he lack of significant objective findings in the other evaluations and the diagnostic test findings of record[.]" Tr. at 21. "Further, Dr. Perez admits that she only treated the claimant on two occasions. Her opinions . . . are not accompanied by thorough, contemporaneous notes, and her opinions are not consistent with the objective medical evidence of record when viewed in its entirety." *Id.* The judge's rationale for discounting Dr. Perez's findings, viewed as a whole, is insufficiently specific. Due to the lack of adequate explanation and analysis in the Decision, the Court is unable to discern what exactly the ALJ relied on in reaching his conclusion.

*See Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (statement that treating physician opinion is inconsistent with record as a whole, including the doctor's own examination findings, "is too general to permit meaningful judicial review"). On remand, Dr. Perez's opinion must be re-evaluated and, if it is again rejected, the evidence supporting this conclusion must be discussed.

### C. Duty to Develop

It is suggested, if Dr. Perez's opinion was to be rejected "a consultative assessment" should have been obtained. Memorandum at 14; *see also id.* at 16 (ALJ "did not seek the opinion of a consultative physician as to . . . RFC"). Similarly, it is pointed out "[t]he ALJ did not seek the opinion of the treating physician as to her RFC[.]" *Id.* at 16.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). In evaluating whether the ALJ fulfilled his obligation, the Court recognizes that "it is always possible to do more." *Johnson v. Chater*, 969 F. Supp. 493, 508 (N.D. Ill. 1997) (internal quotation marks omitted). Thus, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (internal quotation marks omitted).

In justifying his RFC findings, the judge does not cite to any detailed functional assessments provided by treating or examining physicians. Indeed, none appear to exist in the record apart from that of Dr. Perez. As noted previously, the Commissioner admits the opinions of nonexamining physicians cannot themselves "constitute substantial evidence[.]" Opposition at 11. Given the relatively meager evaluative evidence relied upon, the ALJ on remand must, if Dr. Perez's opinions are again to be rejected, carefully consider ordering a consultative examination.

**D.   Combination of Impairments**

Ms. Ward argues, after reciting the mandate that impairments be considered in combination, *see* Memorandum at 16-17, "the ALJ failed to properly consider the effect of her lumbar and cervical spine conditions on her functioning." *Id.* at 17.

With regard to the combined effect of impairments, the Eleventh Circuit has stated:

> [A]n ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. We have reasoned that it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment. In *Bowen v. Heckler,* [748 F.2d 629 (11th Cir. 1984),] this court also cited with approval the reasoning of other courts that a disability claimant should be evaluated as a whole person, and not evaluated in the abstract as having several hypothetical and isolated illnesses.

*Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir. 1993) (internal quotation marks and citations omitted); *see also Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1226-27 (M.D. Fla. 2002). The requirement to consider the combined effects of a claimant's impairments entails two distinct duties. First, the ALJ must consider all impairments and omit none. *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam). Second, the judge must consider the combined effect of the claimant's various impairments, even those the ALJ finds to be not severe, on his or her ability to work. *See Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990) (per curiam); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e); *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1344 (M.D. Fla. 2004).

The judge stated he found evidence of a combination of impairments producing symptoms, but not to the extent alleged. *See* Tr. at 21. Ostensibly, then, the ALJ considered Plaintiff's impairments in combination. Still, despite finding Claimant suffered from a herniated nucleas pulposus as a severe impairment, *see id.* at 20, and mentioning Dr. Rhys D. House's observations in regard to her spine, *see id.* at 21, the judge did not mention the condition in his RFC explanation. On remand, he will be asked to ensure all impairments are considered in combination.

**E.   Pain**

"In this case," writes Plaintiff, "the ALJ did not even mention the Eleventh Circuit pain standard and although he superficially mentioned the regulations and rulings, he did not analyze any of the regulatory factors." Memorandum at 19.[4]

The regulations recognize "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The standard in the Eleventh Circuit for evaluating the Commissioner's treatment of pain testimony has been articulated as follows:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); *see also Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790 (11th Cir. 2005) (per curiam); SSR 96-7p (outlining how subjective complaints are to be evaluated). "A claimant's subjective

---

[4] In the same portion of her brief devoted to the Commissioner's analysis of her pain, Claimant contends that, "at a minimum, the ALJ should clearly have awarded her a closed period" for the year following her gastric surgery. *Id.* at 19-20. While this case needs to be remanded for reconsideration of the entire period of alleged disability, the judge will no doubt also evaluate the possibility of granting a closed period.

testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561.

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence. If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility." *Marbury*, 957 F.2d at 839 (citation omitted). "Failure to articulate the reasons for discrediting subjective [pain] testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).

In reciting the law to be applied, the judge acknowledged it was necessary to "consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §[] 404.1529 and Social Security Ruling 96-7p." *Id.* at 20. This suffices on a formal level to qualify as a reference to the applicable legal standard.

However, a judge must expressly articulate sufficient reasons for discrediting pain testimony, *see, e.g.*, *Reeves*, 2007 WL 1841166, at *7; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and he must consider the factors mentioned in

20 C.F.R. §§ 404.1529, 416.929. Failure to discuss a particular item might not be fatal, but his decision must reveal compliance with the consideration requirement. *See, e.g., Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1378-79 (N.D. Ga. 2006). The factors include 1) the claimant's daily activities; 2) "[t]he location, duration, frequency, and intensity of . . . pain or other symptoms;" 3) factors that aggravate and precipitate symptoms; 4) "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;" 5) "[t]reatment, other than medication, . . . received for relief of . . . pain or other symptoms;" 6) "[a]ny measures . . . used to relieve . . . pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and" 7) "[o]ther factors concerning . . . functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The Decision does not fully address all of these factors. The ALJ focused primarily on various medical reports. *See* Tr. at 21. He also noted certain "inconsistencies . . . in the record." *Id.* Nonetheless, the judge did not, for example, discuss daily activities, medication and its side effects, *see, e.g., id.* at 589-90 (Dramamine alleged to cause extreme drowsiness), 590 (Lortab, Neurontin side-effects), and other treatment received. *See, e.g., id.* at 583 (physical therapy). On remand, the ALJ should consider

all relevant factors if Ms. Ward's pain complaints are to be rejected.

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision with instructions to 1) reconsider Claimant's allegations of nausea/vomiting; 2) reevaluate the opinions of Dr. Perez; 3) if Dr. Perez's opinions are again rejected, carefully consider ordering a consultative examination; 4) ensure the effect of all impairments on Plaintiff's RFC is evaluated; 5) reconsider Claimant's pain complaints, providing a sufficiently detailed rationale to the extent her testimony is not accepted; and 6) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of August, 2007.

/s/        Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of record
    and pro se parties, if any